```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| IN RE:<br><br>LORRAINE S. ROSSITER,<br><br>        Debtor.<br><br>---<br><br>LORRAINE S. ROSSITER,<br><br>        Appellant,<br><br>    v.<br><br>BETTY SIMON,<br><br>        Appellee. | HON. JEROME B. SIMANDLE<br><br>CIVIL NO. 08-1192 (JBS)<br><br>ON APPEAL FROM AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br><br>[Case No. 07-27999/GMB]<br><br>**OPINION** |

APPEARANCES:

Charles M. Izzo, Esq.
P.O. Box 2936
534 Cooper Street
Camden, NJ 08102
    Attorney for Appellant

Francis J. Ballak, Esq.
Keith A. Bonchi, Esq.
GOLDENBERG, MACKLER & SAYEGH, P.A.
660 New Road
Suite 1-A
Northfield, NJ 08225
    Attorneys for Trustee/Appellee

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is before the Court upon appeal from a Bankruptcy Court Order entered on February 4, 2008, which denied the motion of Debtor Lorraine R. Rossiter ("Appellant" or "Debtor") for an extension of the automatic bankruptcy stay on

judicial proceedings pertaining to a piece of property located in Gloucester Township, New Jersey, and granted the motion of Trustee Betty Simon ("Appellee") for relief from the automatic bankruptcy stay.  Appellant argues that the Bankruptcy Court's order granting Appellee relief from the automatic stay, in which the court determined that the property in question was not property of Debtor's estate, was in error.  At issue in this appeal is whether 11 U.S.C. § 1322(c)(1), under which a debtor may cure a default on a lien on the debtor's principal residence until such residence is sold at a foreclosure sale, grants a debtor any rights with respect to such a residence if a final judgment of foreclosure was entered as to that residence prior to the filing of the bankruptcy petition.  For the reasons set forth below, the Court agrees with the Bankruptcy Court that this question must be answered in the negative, and will affirm the order of the Bankruptcy Court.

**II.   BACKGROUND**

   **A.   Facts**

The real property at issue in this appeal is located at 74 Girard Avenue in Gloucester Township, New Jersey (the "property").  (Bonchi Decl. Ex. C.)  Appellant obtained title to this property for one hundred dollars through a quitclaim deed executed by her mother, Ada Rossiter, on January 26, 2004.  (<u>Id.</u>)

This deed was recorded in the Camden County Clerk's Office on April 17, 2007.  (Id.)

At the time Appellant obtained title to the property, it was subject to a tax sale certificate held by Appellee.  (Bonchi Decl. Ex. A at 1.)  In 2003, after Ada Rossiter failed to pay municipal taxes, the Township of Gloucester acquired a lien on the property pursuant to N.J.S.A. 54:5-6, which lien the Township sold to Appellee via a tax sale certificate dated July 3, 2003 and recorded in the Camden County Clerk's Office on August 7, 2003.  (Id.)

Under New Jersey law, such a tax sale certificate "creates . . . a lien on the premises and conveys the lien interest of the taxing authority" to the certificate holder, subject to the property owner's statutory right of redemption. Cherokee Equities, L.L.C. v. Garaventa, 382 N.J. Super. 201, 206 (Ch. Div. 2005) (citation omitted); see also N.J.S.A. 54:5-31 to -32, -46. However, "if the property owner does not redeem the tax certificate within two years of the [sale of the certificate], the holder may acquire title to the property free and clear by instituting an action to foreclose the right of redemption against anyone with an interest in the land." Simon v. Cronecker, 189 N.J. 304, 319 (2007) (citing N.J.S.A. 54:5-86 to -87).  By February 1, 2007, the Rossiters owed upon the tax sale certificate the sum of $20,875.33 in principal, interest, and

subsequent property taxes that had been paid by Appellee. (Bonchi Decl. Ex. A at 1.)

Appellee initiated foreclosure proceedings on the property in the Superior Court of New Jersey, Chancery Division, in February 2007.  (Id.)  On March 8, 2007, Judge Shuster issued an order setting April 23, 2007 as the final date for redemption of the tax sale certificate; a final notice of redemption was mailed by certified mail to Ada Rossiter.  (Id. at 2.)  On July 18, 2007, after the final redemption deadline expired with no offer by Ada Rossiter or "any person or persons acting [on her] . . . behalf" to pay the sum owed to Appellee on the tax sale certificate, Judge Shuster entered an order adjudging that "Ada Rossiter and the Gloucester Township Grants Administration Office and all persons claiming by, from or under them stand absolutely debarred and foreclosed of and from any and all rights, and equity of redemption" to the property, and ordering that Appellee "is vested with an absolute and indefeasible estate of inheritance in fee simple to the [property]."  (Id. at 2-3.)

**B. Procedural History**

On December 6, 2007 – more than four months after the final judgment of foreclosure was entered in Appellee's favor – Appellant filed a petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code.  See In re Lorraine M. Rossiter, D.N.J. Bankr. Pet. No. 07-27999 (GMB), Docket Item 1.  The parties filed

4

cross-motions pertaining to the automatic bankruptcy stay[1] of proceedings pertaining to the property, with Appellant seeking to extend the automatic stay and Appellee seeking relief from the automatic stay.  In re Lorraine M. Rossiter, Docket Items 8, 12.  On January 22, 2008, Bankruptcy Judge Gloria Burns convened a hearing to address these cross motions.  Judge Burns entered an order granting Appellee's motion for relief from the automatic stay on January 23, 2008, and entered an order denying Appellant's motion to extend the stay on February 4, 2008, In re Lorraine M. Rossiter, Docket Items 21, 23; Judge Burns determined that the property "is not property of the Debtor's estate."  In re Lorraine M. Rossiter, Docket Item 21.  Appellant filed an appeal of Judge Burns' February 4, 2008 order with this Court on February 13, 2008.[2]

---

[1] As the Court of Appeals recently explained, "[u]nder the Bankruptcy Code, the filing of a bankruptcy petition generally 'operates as a stay . . . of the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement' of the bankruptcy case."  In re Mystic Tank Lines Corp., --- F.3d ----, 2008 WL 4590674, at *2 (3d Cir. Oct. 16, 2008) (quoting 11 U.S.C. § 362(a)(1)).

[2] As Appellee notes, a notice of appeal of an order of the bankruptcy court must be "filed with the clerk within 10 days of the date of the entry of the . . . order . . . appealed from," Fed. R. Bankr. P. 8002(a), and the failure to file a timely appeal creates a jurisdictional bar to this Court's appellate review.  Shareholders v. Sound Radio, Inc., 109 F.3d 873, 879 (3d Cir. 1997).  The Court disagrees with Appellee's suggestion that the appeal of Judge Burns' February 4, 2008 order in this case is untimely.  While Appellee is correct that Judge Burns' order granting Appellee's motion for relief from the automatic stay was entered on January 23, 2008, the order addressing Appellant's

**III. DISCUSSION**

    **A.    Standard of Review**

This Court has jurisdiction to review the Order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). District courts must review bankruptcy courts' findings of fact for clear error, their conclusions of law de novo, and their exercises of discretion for abuse of discretion. See In re Top Grade Sausage, Inc., 227 F.3d 123, 125 (3d Cir. 2000) (citing In re Engel, 124 F.3d 567, 571 (3d Cir. 1997)); see also In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999) (citing Interface Group-Nevada, Inc. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 145 F.3d 124, 130 (3d Cir. 1998)); Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992). In reviewing factual findings, the district court must "give due regard to the opportunity of [the bankruptcy] court to judge, first-hand, the credibility of the witnesses." In re Rosen, 208 B.R. 345, 348 (D.N.J. 1997) (quoting Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir. 1995)). For mixed questions of law and fact, the

---

cross-motion to extend the stay, which raised an identical issue, was not entered until February 4, 2008; the reason these orders were entered on different dates is not evident from the record. Appellant filed the notice of appeal in this matter within ten days of the date of the entry of the that order, making the appeal herein timely under Rule 8002(a), Fed. R. Bankr. P. See United States v. Pelullo, 178 F.3d 196, 200 (3d Cir. 1999) ("in bankruptcy cases, lifting the automatic stay and a denial of relief from the stay are appealable").

district court "must accept the [the bankruptcy] court's findings of historical or narrative facts unless they are clearly erroneous, but must exercise a plenary review of the court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." In re Sharon Steel Corp., 871 F.2d 1217, 1223 (3d Cir. 1989) (quoting Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). In this matter, the sole question on appeal is a legal one, which the Court reviews de novo.

**B.   Analysis**

Appellant argues that the Bankruptcy Court's determination that the property at issue herein "is not property of the Debtor's estate," In re Lorraine M. Rossiter, Docket Item 21, and its consequent refusal to extend the automatic bankruptcy stay, was in error. Appellant relies upon 11 U.S.C. § 1322(c),[3] which

---

[3]   Section 1322(c) provides in full:

Notwithstanding subsection (b)(2) and applicable nonbankruptcy law--

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

7

affords a debtor the right to cure a default on a lien on the debtor's principal residence "until such residence is sold at a foreclosure sale," and argues that because title to the property at issue in this case was transferred in a strict foreclosure action rather than at a foreclosure sale, she retains a right to cure the default indefinitely.  For the reasons explained below, the Court rejects this argument and will affirm the order of the Bankruptcy Court.

    1.    <u>New Jersey Tax Sale Law</u>

The Court begins by reviewing the New Jersey Tax Sale Law, under which title to the residence occupied by Appellant was transferred to Appellee.  As the New Jersey Supreme Court recently explained,

> [m]unicipal governments depend on real estate taxes and other property-related assessments as their primary sources of revenue.  When those taxes or assessments remain unpaid for a period of time, the municipality is granted "a continuous lien on the land" for the delinquent amount as well as for "all subsequent taxes, interest, penalties and costs of collection."  N.J.S.A. 54:5-6; see also N.J.S.A. 54:5-7 to -8.  The Tax Sale Law converts that lien into a stream of revenue by encouraging the purchase of tax certificates on tax-dormant properties.  <u>See</u> N.J.S.A. 54:5-19, -31 to -32; <u>Varsolona v. Breen Capital</u>, 180 N.J. 605, 620, 853 A.2d 865 (2004) ("The Legislature created the [Tax Sale Law] as a framework to facilitate the collection of property taxes.").

---

11 U.S.C. § 1322(c).  Appellant in this case relies exclusively upon subsection (1).

Simon, 189 N.J. at 318.  The purchase of a tax sale certificate "is a conditional conveyance of the property to the purchaser," id. at 319, whose interest in the property becomes "entirely subordinate to the statutory right of redemption of the [original] property owner."  Cherokee Equities, 382 N.J. Super. at 206 (citation omitted).

After a period of two years, however, the holder of the tax sale certificate may commence a tax sale foreclosure action to bar the original owner's right of redemption "and to foreclose all prior or subsequent alienations and descents of the lands and encumbrances thereon, . . . and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser."  N.J.S.A. 54:5-87.  While there are significant differences between this procedure and the mortgage foreclosure sale procedure in New Jersey,[4] the common outcome of both procedures is to vest title to the property in the purchasing party.  Cherokee Equities, 382 N.J. Super. at 207.

---

[4]  As one court succinctly explained,

> [i]n a mortgage foreclosure, the judgment directs the property to be sold and the sale occurs after the judgment.  In a tax sale certificate foreclosure, the certificate is sold and then after a two-year waiting period, the certificate holder can obtain a foreclosure judgment which vests title directly in the holder without further sale.

In re McGrath, 170 B.R. 78, 81 (Bankr. D.N.J. 1994).

        2.   Section 1322(c)

The Court next reviews 11 U.S.C. § 1322(c)(1), upon which Appellant's argument hinges. As the Court noted, supra, section 1322(c)(1) affords a debtor the right to cure a default on a mortgage secured by the debtor's principal residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." § 1322(c)(1).

While the courts in this District were long divided over when this right to cure expired – with some courts identifying the foreclosure auction as the "foreclosure sale" referenced in the statute, and others holding that such a sale did not take place until the deed to the property was delivered to the purchaser – the Court of Appeals recently resolved this dispute in favor of the "gavel rule." See In re Connors, 497 F.3d 314, 317 (3d Cir. 2007). Conners holds, in the context of a mortgage foreclosure sale, that "a Chapter 13 debtor does not have the right to cure a default on a mortgage secured by the debtor's principal residence between the time the residence is sold at a foreclosure sale and the time the deed is delivered," because section 1322(c)(1) affords a right to cure a default on a home mortgage only until the gavel falls at a foreclosure auction. Id. at 321. As the Court of Appeals explained, the "foreclosure sale" referenced in section 1322(c)(1) is "'completed' with the fall of the gavel and the vesting of equitable title in the winning bidder." Id. at 322.

3.  <u>Analysis</u>

While multiple courts have addressed the applicability of 11 U.S.C. § 1322(c)(1) to the context of strict foreclosures, none appears to have adopted the argument advanced by Appellant herein – namely, that because section 1322(c)(1) provides debtors a right to cure a default on a lien on his principal residence "until such residence is sold at a foreclosure <u>sale</u>," § 1322(c)(1) (emphasis added), a debtor whose residence was foreclosed upon through a strict foreclosure action retains a right to cure such a default long after the conclusion of the foreclosure proceedings.  The majority of courts faced with reconciling section 1322(c)(1)'s reference to "foreclosure sale[s]" to strict foreclosure procedures where no such sale occurs have "look[ed] to the substantive state law to define what counts as a 'foreclosure sale' in [the] strict foreclosure [context]."[5]  <u>In re Taylor</u>, 286 B.R. 275, 281 (D. Vt. 2002); <u>see also</u> <u>In re Pellegrino</u>, 284 B.R. 326, 330-31 (Bankr. D. Conn. 2002) ("[t]he more appropriate approach is to attempt to translate into a strict foreclosure context the point of finality

---

[5]  <u>But</u> <u>see</u> <u>Schinck v. Stephens</u>, 221 B.R. 290, 297 (Bankr. D. Me. 1998) ("Because the rights and interests of mortgagees and mortgagors under Maine's strict foreclosure procedures are determined without a 'foreclosure sale,' the federal law extension of cure rights embodied in § 1322(c)(1) has no application.").  The Court agrees with the <u>Taylor</u> court's comment that "[s]uch a reading . . . fails to vindicate the important interests represented in Section 1322(c)(1)." <u>Taylor</u>, 286 B.R. at 281.

11

represented by Section 1322(c)(1)'s 'sale' terminology"). The Court agrees with this approach.[6]

As the Court of Appeals noted in Conners, in the mortgage foreclosure context, the "foreclosure sale" referenced in section 1322(c)(1) corresponds with the fall of the gavel at the foreclosure auction and the concomitant "vesting of equitable title in the winning bidder." Connors, 497 F.3d at 322. In line with Taylor and Pellegrino, therefore, the Court looks to New Jersey's Tax Sale Law for the equivalent event in the tax sale certificate context, after which a Chapter 13 debtor's section 1322(c)(1) rights would expire. See Taylor, 286 B.R. at 281.

Two such events present themselves: the sale of the certificate or the termination of the entry of judgment at the foreclosure proceeding. The Court concludes that the latter corresponds closely with section 1322(c)(1)'s reference to "a

---

[6] Appellant's argument that under section 1322(c)(1), she retains a right to cure the default on her home mortgage indefinitely because her property was not sold at a foreclosure sale, is untenable. At a fundamental level, it must be recognized that after the Superior Court entered an order vesting Appellee with "an absolute and indefeasible estate of inheritance in fee simple to the [property]," (Bonchi Decl. Ex. A at 2-3), there no longer was a "lien on the debtor's principal residence" to cure. § 1322(c)(1). It bears further note that Appellant's argument runs contrary to the Court of Appeals' adoption of the "gavel rule" in Connors, wherein the Court observed that "the gavel rule protects purchasers by avoiding an interpretation that turns § 1322(c)(1) into a federal vehicle for divesting them of property rights acquired at foreclosure sales." Connors, 497 F.3d at 323. Appellant's approach would cast a cloud on the title of any property acquired in New Jersey through the Tax Sale Law.

12

foreclosure sale," and is the event at which the debtor's right to cure expires.  The acquisition of the tax sale certificate manifestly is not the equivalent of placing the winning bid at a foreclosure auction.  Unlike the winning bidder at a foreclosure auction, the purchaser of a tax sale certificate is not vested with equitable title to the property.  See Connors, 497 F.3d at 322.  Rather, such a purchaser merely receives an

> inchoate interest consist[ing] of three rights: the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; the right to redeem from the holder a subsequently issued tax sale certificate; and the right to acquire title [in two years] by foreclosing the equity of redemption of all outstanding interests, including that of the property owner.

Varsolona v. Breen Capital Services Corp., 180 N.J. 605, 618 (2004); see also Black's Law Dictionary 816 (7th ed. 1999) (defining "inchoate interest" as a "property interest that has not yet vested").

By contrast, "[t]he effect of a final judgment of foreclosure under the Tax Sale Law is to vest title to the property in fee simple" in the holder of the tax sale certificate.  Cherokee Equities, 382 N.J. Super. at 208 (emphasis added) (citing N.J.S.A. 54:5-87).  This effect corresponds more closely with "the fall of the gavel and the vesting of equitable title in the winning bidder" at a foreclosure auction than do the inchoate rights that accompany the acquisition of a tax sale certificate.  Connors, 497 F.3d at 322.  The Court accordingly

13

holds that, within the context of a strict foreclosure proceeding brought pursuant to New Jersey's Tax Sale Law, "the operative date of the 'foreclosure sale' specified in Section 1322(c)(1)" is the date of entry of final judgment of foreclosure pursuant to N.J.S.A. 54:5-87.  Taylor, 286 B.R. at 282.

Applying these considerations to the facts of this case, then, the Court concludes that Appellant's section 1322(c)(1) rights expired on July 18, 2007, when Judge Shuster of the Superior Court entered judgment vesting "an absolute and indefeasible estate of inheritance in fee simple to the [property]" in Appellee.  (Bonchi Decl. Ex. A at 2-3.)  The Bankruptcy Judge thus correctly determined that the property was "not property of the Debtor's estate," In re Lorraine M. Rossiter, Docket Item 21, and properly denied Appellant's motion to extend the automatic bankruptcy stay.

**IV.   CONCLUSION**

For the reasons explained above, the Court will affirm the Bankruptcy Court's February 4, 2008 order denying Appellant's motion to extend the automatic bankruptcy stay.  The accompanying Order will be entered.

**November 4, 2008**                         **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge